Timothy R. CASTLEBERRY and, Nicholas Raineri, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F-82-227, F-82-228.

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1984.

As Amended Feb. 13, 1984.

Rehearing Denied April 5, 1984.

Charles Foster Cox, Jr., Oklahoma City, for appellants.

Jan Eric Cartwright, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Timothy R. Castleberry and Nicholas Raineri, appellants, were charged with two (2) counts each of Possession of a Controlled Dangerous Substance with Intent to Distribute in the District Court of Oklahoma County, Case No. CRF–81–2678. The jury found the appellants guilty on both counts, and assessed punishment for Raineri at nine (9) years' imprisonment and a fine of five thousand dollars ($5,000) for Count 1 and seven (7) years' imprisonment plus a five thousand dollar ($5,000) fine for Count 2; and, for Castleberry, ten (10) years' imprisonment plus a fine of five thousand dollars ($5,000) for Count 1 and seven (7) years' imprisonment plus a five thousand dollar ($5,000) fine for Count 2. The trial court sentenced the appellants accordingly, additionally ordering the sentences to run concurrently and suspending the fine for Count 2 as to both appellants.

Appellant Castleberry was separately convicted of Possession of a Controlled Dangerous Substance, Cocaine, in Case No. CRF–82–2676 in the Oklahoma County District Court. The trial court sentenced him to eight (8) years' imprisonment. The appeals from the judgments and sentences are consolidated since the same factual circumstances are involved in each case.

At approximately noontime on June 9, 1981, Oklahoma City Police Officer R.D. Taylor received a telephone call from a previously unknown confidential informant who told him that two men, one named Castleberry, were staying in Room 113 of a motel in Oklahoma City, driving a blue Thunderbird with Florida license plates and carrying various narcotics in blue suitcases. The informant also gave physical descriptions of the men to the officer.

Officer Taylor proceeded immediately to the location, observed a vehicle matching the informant's description in front of the specified room, and discovered, from the motel clerk, that a man named Castleberry was registered in that room. He then returned to his car, positioned some five parking spaces from the other vehicle, and waited for back-up assistance to arrive. After several minutes, Officer Taylor observed the appellants emerge from the room and put several suitcases that matched the informant's description into the trunk of the car. At this point, Officer Taylor announced himself as a police officer, approached the car with his badge in one hand and his weapon in the other, and told the appellants to place their hands on the car. Raineri did as ordered, but Castleberry hastily closed the trunk lid and threw a small white object into the car. During a struggle which ensued between Officer Taylor and Castleberry, Castleberry reached up, locked the car door and shut it.

At this point, Officer Citty arrived and opened the trunk of the car with keys Officer Taylor had removed from the door of the car. The officers opened the suitcases, found narcotics and placed the appellants under arrest. Officer Citty then searched the interior of the car and discovered a white Band-Aid box which contained a substance later determined to be cocaine.

■ Appellants' sole assignment of error is that the trial court erred in overruling their motion to suppress, thereby admitting evidence obtained as a result of an unlawful arrest, search and seizure. The Fourth Amendment of our federal constitution prohibits unreasonable searches and seizures. Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under

the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exingencies of the situation made that course imperative. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Thus, it is incumbent on the State to show why the warrantless search of the car and its contents was permissible in the case at bar.

The State first contends that the search was lawful as incident to a lawful arrest. Appellants challenge both the legality of the arrest and the scope of the search.

■ Although Officer Taylor testified that he did not arrest the appellants until after the suitcases were opened, the appellants were not free to move after the officer advanced toward them with revolver drawn and ordered them to place their hands on the car. This Court has held that when an officer restrains the individual's freedom of movement, that person is under arrest. *Wallace v. State,* 620 P.2d 410 (Okl.Cr.1980), *Castellano v. State,* 585 P.2d 361 (Okl.Cr.1978). Under the circumstances, the appellants in the present case were under arrest from the moment Officer Taylor approached them and announced his identity.

■ Appellants submit that the arrest was unlawful because Officer Taylor did not at that time have probable cause to make it. The Oklahoma statutes allow a warrantless arrest if the officer has reasonable cause to believe a felony has been committed by the person arrested. 22 O.S. 1981, § 196. If at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that an offense had been or was being committed, probable cause is established and the arrest is lawful. *Beck*

*v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), *Greene v. State,* 508 P.2d 1095 (Okl.Cr.1973).

■ In this case, appellants argue that the officer had no basis for judging his informant to be reliable or the information trustworthy. We disagree. In *Grimes v. State,* 528 P.2d 1397 (Okl.Cr.1974), this Court stated that an informant's trustworthiness could be established if independent facts within the officer's knowledge corroborated the information. Here, the information was sufficiently corroborated as the only detail not confirmed before the arrest was the presence of narcotics in the suitcases, an allegation Officer Taylor could not lawfully verify before the arrest under the given circumstances.

■ The search made subsequent to the arrest, however, cannot be justified as a search incident to a lawful arrest, for it far exceeded the permissible bounds of such a search, that is, the area within the arrestee's immediate control from which he might gain possession of a weapon or destructible evidence. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Both appellants were restrained—one was handcuffed, the other was on the ground with an officer pointing a gun at him—at the time of the search. The car doors and trunk were locked, so once the officer gained possession of the keys, there was no danger of appellants' procuring a weapon or destroying evidence from the interior of the car. A search incident to the arrest would therefore justify neither a search of the locked car nor a search of the suitcases therein.

The State's only other justification offered is that the warrantless search was lawful because the officers had probable cause to believe that narcotics were in the suitcases and exigent circumstances required prompt action. The so-called automobile exception on which the State relies was first recognized in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Cases subsequent to *Carroll* caused some confusion about when contain-

724

ers in cars may be searched, but the Supreme Court clarified the law in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

■ If the officer has probable cause to believe there is contraband somewhere in the car, but he does not know exactly where, he may search the entire car as well as any containers found therein. *See United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). If, on the other hand, the officer only has probable cause to believe there is contraband in a specific container in the car, he must detain the container and delay his search until a search warrant is obtained. *See United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

The *Ross* court adopted Chief Justice Burger's distinction set out in his concurring opinion to *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), wherein he explained that:

> [I]t was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband. The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick*. The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an 'automobile' exception case. The Court need say no more. (Citations omitted). *Id.*, at 766–767, 99 S.Ct. at 2594.

*United States v. Ross*, 456 U.S. at 813, 102 S.Ct. at 2166–67, 72 L.Ed.2d at 586–87.

■ The case at bar clearly falls within the *Chadwick-Sanders* line of cases. The suspected locations of the contraband were the suitcases and the Band-Aid box which Castleberry threw into the car. Accordingly, we hold that the motion to suppress was erroneously overruled. The officers should have detained the containers until a search warrant had been obtained.

We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

*McDonald v. United States*, 335 U.S. 451, 445–456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

For the reasons herein stated, the judgments and sentences appealed from should be, and the same are hereby, REVERSED.

CORNISH, J., specially concurs.

BUSSEY, P.J., dissents.

CORNISH, Judge, specially concurring.

I fully concur in Judge Brett's analysis and application of the Supreme Court's precedents in this case. I would simply note that it has been settled in this State for several years that probable cause will not support a warrantless search in the absence of an emergency, *i.e.*, "exigent circumstances":

[I]t is without question that the existence of probable cause alone will not satisfy a warrantless search. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Whitehead v. State,* 546 P.2d 273 (Okl.Cr.1976). Ordinarily, if an officer has probable cause to make a search, then he should go to a magistrate for a warrant authorizing such a search. Only when there are 'exigent circumstances' in addition to the existence of probable cause may an officer legitimately make a search without a warrant.

*Blackburn v. State,* 575 P.2d 638, 642 (Okl. Cr.1978).

Absent probable cause to search the entire car, the officers were only authorized to seize the suspect containers and hold them pending issuance of a search warrant. Although probable cause existed with regard to the containers, no exigent circumstances were shown such as to justify a warrantless search.